**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

LESLIE CRIM,                                              Case No. 1:11-cv-137

               Plaintiff,                               Dlott, J.
                                                         Bowman, M.J.

     v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

**REPORT AND RECOMMENDATION**

**I. Background**

Michael Saylor filed applications seeking social security benefits in November 2006, alleging an onset date in June 2005.[1]  Those applications were denied at the administrative level.  Within three weeks of fully exhausting his administrative remedies, in January 2011, Mr. Saylor passed away.  Thereafter, Mr. Saylor's attorney filed a notice of substitution of party, in which Mr. Saylor's girlfriend and three minor children were substituted in place of Mr. Saylor for purposes of pursuing an appeal of the Commissioner's decision in this Court.  On July 9, 2012, the undersigned filed a Report and Recommendation ("R&R"), recommending that the Commissioner's decision be reversed, and that this case be remanded for an immediate award of benefits.  (Doc. 17).  No objections were filed, and on August 3, 2012, the presiding district judge adopted that R&R for the opinion of this Court.  (Doc. 18).

---

[1]Plaintiff amended his onset date to June 18, 2005 at the administrative hearing.  (Doc. 17 at 22).

On September 4, 2012, Plaintiff moved for an award of attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. §2412(d).   The Defendant filed a response objecting to the amount of the fee award sought by counsel.   Plaintiff has filed both a reply and a supplemental memorandum in support of her claim.   I now recommend that Plaintiff's motion be granted, but with a reduction to the total fee award claimed.

## II. Analysis

Because their clients are frequently indigent, attorneys who practice in the area of social security often seek compensation for their work under one of two statutory provisions that provide for an award of fees.   The EAJA is one such provision,[2] providing for an award to any "prevailing party" of "fees and other expenses…in any civil action…brought by or against the United States."  28 U.S.C. §2412(d)(1)(A).   Fees will generally be awarded as long as the position of the Commissioner was not "substantially justified."  *Id.*, at §2412(d)(1)(B).    On the record presented, the Commissioner does not dispute that Plaintiff is a prevailing party who is entitled to an award of fees.   The lone dispute concerns the amount of that award.

Plaintiff seeks a total fee award of $12,563.44, representing 64.8 hours of attorney time at an hourly rate of $194.  (Docs. 23, 25).   As with most fee awards, the total claimed is based upon the simple mathematical construct of hours expended

---

[2]A second provision is contained in the Social Security Act itself, 42 U.S.C. §406.  Section 406(a) compensates work performed during administrative proceedings, while §406(b), like the EAJA, compensates work performed in court.   Fees under §406(b) are usually higher than EAJA awards, because they are calculated as a percentage of benefits.  Counsel expressly reserves his right to seek an additional future award under §406(b).

multiplied by the claimed hourly rate. This "lodestar" method is generally accepted as reflecting "most, if not all, of the factors relevant to determining a reasonable attorney's fee." *Glass v. Sec'y of HHS*, 822 F.2d 19, 21 (6th Cir. 1987)(quoting *Coulter v. State of Tennessee*, 805 F. 2d 146, 149 (6th Cir. 1986)).

Determining what is a "reasonable" fee necessarily involves the exercise of some discretion, both by the billing attorney and by this Court. *See* 28 U.S.C. §2412(d)(1)(D)(limiting award to "reasonable attorney fees" including "prevailing market rates for the kind and quality of the services furnished."); *Commissioner v. I.N.S. v. Jean*, 496 U.S. 154, 165-166 (1990)(The EAJA "provides district courts discretion to adjust the amount of fees for various portions of the litigation, guided by reason and statutory criteria."). Under the express language of the EAJA, it is the Plaintiff's burden to prove that the fees requested under the EAJA are, in fact, "reasonable." *See also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Defendant objects to both of the multipliers used by Plaintiff to calculate her award in this case, arguing that the number of hours claimed is not reasonable, and that Plaintiff has failed to show entitlement to the hourly rate of $194. Having carefully reviewed the record in this case, the undersigned agrees. For the reasons discussed, the undersigned recommends a reduction in the total number of hours to 40, and a reduction of the hourly rate to $174, for a total award of $6960. While that award remains significantly higher than the awards ordinarily awarded by this Court in social security cases, the undersigned finds such an award to be "reasonable" and supported by the record presented.

**A.  Surveying Average Social Security Fee Awards Under the EAJA**

As stated, the total award sought greatly exceeds fee awards awarded by the undersigned to date in social security cases.  Plaintiff's motion seeks payment for a more hours, and at a much higher hourly rate, than has been awarded by the undersigned in any prior case.  *See e.g.*, *McKnight v. Com'r of Soc. Sec.*, Case No. 1:11-cv-116 ($2700 stipulated award); *Pollard v. Com'r of Soc. Sec.*, Case No. 1:11-cv-186 ($2700 stipulated award); *Simpkins v. Com'r of Soc. Sec.*, Case No. 1:11-cv-165 ($4856, for 27.75 hours at $175 per hour); *Major v. Com'r of Soc. Sec.*, Case No. 1:10-cv-530 ($4320, for 32 hours at $125 per hour); *Willis v. Com'r of Soc. Sec.*, Case No. 1:10-cv-594 ($2725, for 19 hours at $125 per hour); *Russell v. Com'r of Soc. Sec.*, Case No. 1:10-cv-746 ($7066, for 38.6 hours at $174 per hour); *Sutton v. Com'r of Soc. Sec.*, Case No. 1:10-cv-937 ($3562, for 28.5 hours at $125 per hour, reduced from original claim in excess of $10,000); *Ayers v. Com'r of Soc. Sec.*, Case No. 1:10-cv-30 ($2645, for 13.5 hours at $170 per hour); *Wallace v. Com'r of Soc. Sec.*, Case No. 1:09-cv-382 ($3343, for 26.75 hours at $125 per hour); *Chappel v. Com'r of Soc. Sec.*, Case No. 1:09-cv-865 ($2375, for 19 hours at $125 per hour); *Blackburn v. Com'r of Soc. Sec.*, Case No. 09-cv-943 ($3707, for 19.8 hours at $170 per hour); *Bushor v. Com'r of Soc. Sec.*, Case No. 1:09-cv-320 ($2343, for 18.75 hours at $125 per hour); *Dudley v. Com'r of Soc. Sec.*, Case No. 1:09-cv-749 ($2500 stipulated award); *Stacey v. Com'r of Soc. Sec.*, Case No. 1:08-cv-747 ($6460 stipulated award).

Likewise, a brief review of similar cases[3] before the district judge assigned to this case reflect much lower EJA fee awards than the award at issue here.  *See e.g., Wagner v. Com'r of Soc. Sec.*, 2012 WL 1656973 (S.D. Ohio May 10, 2012)($2465); *Edwards v. Com'r of Soc. Sec.*, 2011 WL 1002186 (S.D. Ohio March 16, 2011)($5465); *Fantetti v. Com'r of Soc. Sec.*, 2010 WL 546729 (S.D. Ohio Feb. 12, 2010)($2229); *Manning v. Com'r of Soc. Sec.*, 2010 WL 150140 (S.D. Ohio Jan. 14, 2010)($8010, unopposed); *Price v. Com'r of Soc. Sec.*, 2009 WL 3786812 (S.D. Ohio Nov. 11, 2009)($2451.90); *English v. Com'r of Soc. Sec.*, 2009 WL 1617076 (S.D. Ohio June 9, 2009)($3029.04); *Rechel v. Com'r of Soc. Sec.*, 2008 WL 3876718 (S.D. Ohio Aug. 20, 2008)($2887.50).

In fact, the claimed fee award appears to be greater than the EAJA awards listed in all published social security cases within the Sixth Circuit over the last decade.[4]  *See, e.g., Page v. Astrus*, ___ F. Supp.2d ___, 2013 WL 396263 (E.D. Mich., Feb. 1, 2013)($5162.50); *Cox v. Com'r of Soc. Sec.*, ($3993.75); *Oliver v. Com'r of Soc. Sec.*, ___ F. Supp.2d ___ (S.D. Ohio 2013)($2637.50); *Pyatt v. Com'r of Soc. Sec.*, 771 F. Supp.2d 891 (S.D. Ohio 2011)($2156); *Cowart v. Commm'r of Soc. Sec.*, 795 F. Supp.2d 667 (E.D. Mich. 2011)($4555); *Bentley v. Com'r of Soc. Sec.*, 524 F. Supp.2d 921 (W.D. Mich. 2007)($2775); *Dowd v. Com'r of Soc. Sec.*, 314 F. Supp.2d 680 (E. D. Mich. 2003)($4486).

---

[3]This survey was culled from Westlaw cases, assumed to be representative but for the fact that most cases involved unopposed motions for fees.  Recently, the Commissioner has begun to challenge fee awards with greater frequency than in the past.

[4]In *Astrue v. Ratliff*, 130 S. Ct. 2521 (2010), the total amount claimed was just $2112.

Judicial notice of other cases helps to illustrate what constitutes a "reasonable" fee award, but provides no definitive limits, because each case is necessarily fact-specific. Thus, a sufficiently unusual case may well warrant a statistical outlier or unusually high fee award, if the hours required were exceptional, an unusually high hourly rate is warranted, or both.

The tension between widespread judicial knowledge of "typical" fees in social security cases and the need for individualized discretion was recently addressed by the Ninth Circuit in *Costa v. Com'r of Soc. Sec. Admin.*, 690 F.3d 1132 (9th Cir. 2012). There, the court reversed a district court's "de facto cap" on a fee award in excess of forty hours, warning trial courts that while they "may consider" the average range of twenty to forty hours, it is "an abuse of discretion to apply a de facto policy limiting social security claimants to twenty to forty hours of attorney time in 'routine' cases." *Id.* at 1136. "[I]n determining the reasonableness of a specific fee request, courts cannot drastically reduce awards simply because the attorney has requested compensation for more than forty hours or make reductions with a target number in mind." *Id.* The Ninth Circuit's decision is not binding on this Court, and the undersigned finds the decision only partially persuasive under Sixth Circuit precedent. *Accord Glass,* 622 F.2d at 21 (noting that a "boiler-plate formula for fixing attorney's fees…does not comply with our requirement for individualized discretion").

The undersigned wholeheartedly agrees that each case requires the exercise of individual discretion, and that no absolute cap can be *automatically* applied in any case. However, the undersigned respectfully parts ways with *Costa* to the extent that the court

6

in one breath permits trial courts to "consider," as a legitimate factor, widespread knowledge of the normative ranges of hours spent in similar social security cases, but in the next breath questions "the usefulness of reviewing the amount of time spent in other cases to decide how much time an attorney could reasonably spend…." *Id.* at 1136. The latter portion of the court's analysis implies that surveying other cases is useful only for establishing the hourly *rate* or "quality" factor, and not for the "quantity" factor - the *number* of hours expended. *Costa* dismisses comparators of the number of hours because of the need for case-specific analysis of "the complexity of the legal issues, the procedural history, the size of the record, and when counsel was retained." But those factors can indeed be analyzed in part through comparison to similar cases, as evidenced by the undersigned's approach in this case.

Taken to its extreme, *Costa* would require courts to focus on individual time entries to the detriment of common sense, and in so doing would result in an enormous expenditure of judicial resources to ferret out wasteful attorney time entries one by one. Neither the EAJA nor Sixth Circuit case law mandates that level of slavish attention to detailed analysis of each time entry in every case, particularly where analysis of other factors makes clear that the total award is not "reasonable." For example, when courts cannot adequately assess the time spent on individual tasks due to overly general descriptions or counsel's practice of combining multiple tasks into single entries, courts in this circuit have routinely applied significant across-the-board percentage reductions. *See, e.g., Saint-Gobain Autover USA, Inc. v. Xinyi Glass North America, Inc.*, 707 F. Supp.2d 737, 764-765 (N.D. Ohio 2010)(applying across the board reduction of 50% for

7

inadequate summaries, citing cases supporting reductions of up to 90%); *Cleveland Area Bd. v. Realtors v. City of Euclid*, 965 F. Supp. 1017, 1021 (N.D. Ohio 1997)(reducing fees due to practice of "lumping" multiple tasks in single entries).

In the end, while individualized discretion must be employed, the EAJA permits compensation only for a "reasonable" fee that take into account "prevailing market rates." Both the number of hours expended *and* the claimed hourly rate make up the "prevailing market rate" in the context of social security appeals filed in federal court.

The Sixth Circuit has previously noted that the number of hours expended in pursuit of most social security appeals is in the range of "twenty to thirty hours," *Glass v. Sec'y of HHS*, 822 F.2d 19, 20 (6th Cir. 1987), with forty hours topping out the high end of what has been described as an average range. S*ee Hayes v. Sec'y of HHS*, 923 F.2d 418, 420 (6th Cir. 1990)(noting that the "average number of hours for an attorney to work on a social security case ranges from 30 to 40 hours"). A typical range of 15-25 hours was recently documented by another court in this district. *See Spiller v. Com'r of Soc. Sec.*, 2:11-cv-94, 2013 WL 361052 *3 (S.D. Ohio Jan. 29, 2013)(adopted for opinion of the Court at 2013 WL 708038 (S.D. Ohio Feb. 25, 2013)), following that court's review of "a large number of EAJA fees/costs petitions recently filed in this District." *Id.* (collecting cases). This range aligns with the experience and review of EAJA fee award cases previously decided by the undersigned (see above).

Unlike other types of civil cases in which the amount of discovery alone often creates wide variability in litigation hours, the vast majority of social security appeals conform to a relatively narrow range of hours because they involve a largely settled

8

area of law, require no discovery, and follow a precise briefing schedule, often (as in this case) with just a single substantive brief submitted by each party.  Still, neither the Sixth Circuit nor any court within it has imposed a hard and fast rule concerning the maximum number of hours considered to be "reasonable" for litigating a social security case.  In addition to fact-driven characteristics that influence the amount of research and writing time required, no social security grid-like rule can fully account for human variations in the time it takes to complete a given task.  While part of these differences may be attributed to attorney experience,[5] more personal qualities also play a role.  One attorney may be prone to exhaustive legal research in every case, while another may be satisfied with his or her familiarity with the law, with minimal research only to update that knowledge.  One lawyer may draft his Statement of Errors painstakingly, requiring many hours to refine even a short memorandum, while another may have a knack for articulating salient points quickly, and supporting them with standard law.  In that respect, a winning memorandum may take one attorney 6 hours to complete, while requiring three times that amount of time by a peer of equal experience.  In cases in which an attorney's fee is authorized by the EAJA, the vexing question then becomes, to what extent should the attorney who is more painstaking in his or her approach be compensated?  Are all hours to be deemed "reasonable" so long as they were accurately and contemporaneously recorded?  If a case requires a particular attorney 50 or 60 hours to complete that would have taken a comparably experienced attorney less than half that time, what is required to prove that the unusually high number of

---

[5]For example, a more experienced attorney might be expected to complete a case in fewer hours.

hours was "reasonable"?

The undersigned concludes that notwithstanding the subjective qualities of both the case and counsel that will result in a compensable *range* of hours, some level of objectivity is required to guard the boundaries of that subjective range.  In this district, an average range of fifteen to forty hours is an appropriately objective guideline that should inform judicial discretion in determining a "reasonable" number of hours for most fee awards in social security appeals, to the extent that analysis of the characteristics of an individual case confirms that it should fall within normative values.  In truth, most cases are likely to be completed within thirty hours.[6]

With that said, forty hours is not intended to constitute an absolute "cap."  Rather, this average range provides only a useful starting point, and a frame of reference.  Thus, in cases in which the number of hours claimed far exceeds the average range, it is natural to more carefully scrutinize the basis for that added expense (especially when challenged by opposing counsel) – in the same way that the EAJA requires courts to scrutinize whether an attorney is entitled to a higher hourly award than the $125 statutory rate.  *Accord Spiller v. Com'r of Soc. Sec.*, 2:11-cv-94, 2013 WL 361052 at *3 (S.D. Ohio Jan. 29, 2013)(acknowledging that no "firm, bright-line rule" can be applied, but also recognizing that only unusual social security appeals "of advance[d] complexity" would require the expenditure of "40 hours or more."

---

[6]Although fifteen hours is lower than referenced by some courts, *Spiller* and case law cited herein confirms that a great number of "typical" cases are litigated to completion in fewer than twenty hours. And while *Spiller* and *Glass* also suggest 25-30 hours as the outer limit, this case establishes a boundary at 40 hours, based upon a more inclusive read of the relevant case law in this district.

**B.  The Hours Expended In This Case**

A prevailing party must submit "an itemized statement…stating the actual time expended and the rate at which fees and other expenses were computed," 42 U.S.C. §2412(d)(1)(B), but the court retains the ultimate discretion to determine what is a "reasonable attorney fee."  *Id.* at §2412(d)(1)(D).  So that any reviewing court will find an adequate record to review its exercise of discretion in this case, the undersigned has attempted to explain the myriad of reasons for concluding that Plaintiff has failed to carry her burden of proving that the overall hours were "reasonable" for the work performed.

As stated, part of that justification stems from the conclusion that 40 hours represents the outer limits of reasonableness for most social security cases.  In *Spiller,* the court reduced the number of hours claimed based not only on its conclusion that specific time entries were overstated, but because the total hours reflected "inefficient litigation practices" as compared to the average range for such cases (reducing total hours to 32, from more than 40 hours claimed, at rate of $125 per hour).  *Id.* at *3.  As in *Spiller*, the Commissioner argues that the number of hours expended was excessive, in part because this case was "routine."  Plaintiff protests that the hours spent were reasonable because this appeal was particularly complex and unique.  In accordance with *Spiller* and for the reasons explained above, the Court will first review whether the underlying case represents a "typical" social security case for which a typical range of hours might have been expected, or whether it falls outside that realm.

**1.  The Typicality of the Case Presented Requires a Reduction**

As evidence to support the number of hours outlayed, Plaintiff points first to the size of the administrative record, weighing in at 878 pages.  The undersigned agrees that the administrative record was slightly more extensive than the "average" record.  On the other hand, administrative records in excess of 800 pages are hardly unique.  A review of twenty-one of the oldest social security cases currently before the undersigned finds administrative transcripts ranging from 306 to 1943 pages, with 7 of those transcripts, or 33%, exceeding 800 pages.  Based on the experience of this Court and the practice of the undersigned to work on cases in the order filed, these cases are presumed to be a representative sample.  Moreover, with the exception of requiring the substitution of a party, this case was procedurally straightforward and did not one involve multiple remands or ALJ opinions.  *Compare, e.g. Chappel v. Com'r of Soc. Sec,* Case No. 09-cv-865 (awarding EAJA fee of $2375 for 19 hours of work, after specifically noting the "unusual length and complexity" of the underlying case, which included four separate ALJ decisions and spanned 1300 pages).

Plaintiff additionally points to the complexity of the case as involving "six severe medically determinable impairments." (Doc. 24 at 4). However, Plaintiff's arguments focused almost exclusively on Mr. Saylor's severe anxiety disorder.  The ALJ found only three severe impairments: "anxiety/panic disorder, bipolar disorder, and alcohol/marijuana abuse reportedly in remission (but continued abuse is suspected)." (Tr. 15).  The additional three impairments referenced by counsel in support of the fee award is unclear; Plaintiff did not assert any error concerning additional impairments.

12

Plaintiff also asserts that this case required more time than the average case because counsel was required to conduct both factual and legal research concerning whether Mr. Saylor's girlfriend and minor children could pursue his appeal in this Court, following his death.  Although Plaintiff makes no claim for time spent prior to filing the complaint, this type of research is arguably in the nature of prelitigation research to determine whether a case can be filed.  Such work is not compensable under the EAJA. As reflected in counsel's time entries, the filing of the complaint traditionally triggers work compensable under the EAJA, whereas 42 U.S.C. §406(a) provides compensation for work prior to suit, during administrative proceedings.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 94 (1991)("Section 504...is the only part of the EAJA that allows fees and expenses for administrative proceedings conducted *prior to the filing of a civil action*.")(emphasis added).   In any event, the substitution of minor children or a widow/widower for a deceased claimant, while not run-of-the-mill, ordinarily should not require significant additional time. The regulations permitting substitution are straightforward.  Moreover, having represented Plaintiff throughout the administrative proceedings for a period of four years prior to filing suit in this Court, counsel should have been very familiar with Mr. Saylor's 878 page administrative record.[7]

Plaintiff objects to the Commissioner's characterization of the legal issues in this case as "routine," arguing that the issues presented are "fundamental to a competent presentation."   However, the fact that issues may be "fundamental" does not prevent

---

[7]By contrast, counsel who is newly appointed for the purpose of filing a federal appeal may require slightly more time than average to review an administrative record.

them from being routine. In this case, the primary issues presented – ultimately requiring reversal – related to the ALJ's errors in failing to accord the opinion of the treating physician "controlling weight," and in over-relying upon the opinion of a non-examining consultant who had not reviewed Plaintiff's full records in determining Plaintiff's RFC.  In fact, the errors are among the most common presented in the majority of social security cases that this Court reviews.  While the application of legal standards to each case is unique, the objective "reasonableness" of hours of legal research in these areas by an experienced social security attorney is open to question.

Plaintiff also points out that the Statement of Errors was 18 pages in length. Again, in the experience of this Court that length is remarkably average.[8]  Plaintiff notes that the Statement of Errors contained an additional 31 pages of exhibits.  While attaching exhibits to a statement of errors in somewhat unusual, in this case nearly all of the exhibit pages (many of which were duplicates) were comprised of routine documents used to support Plaintiff's right to pursue the social security appeal on behalf of Mr. Saylor, including Ms. Crim's affidavit, Mr. Saylor's death certificate, and the birth certificates of the three children.  As Plaintiff notes, three pages reflect a "summary" of Mr. Saylor's contacts with his case manager, which undoubtedly took some time for counsel to compile.  However, that "summary" consists largely of a list of the dates that Mr. Saylor had contacts with his case worker, and a notation of whether that contact was by telephone or in person.  As such, the data was unnecessarily duplicative to the

---

[8]Surveying the oldest 21 social security cases pending before the undersigned shows Statements of Error ranging from 4 to 33 pages. The statistical mean length of those Statements is 17.8 pages.

14

administrative record.

Last, counsel argues that this case was unusually complex because "[a]t the time of the ALJ hearing,[9] Mr. Saylor was a 31-year-old mentally ill, noncompliant, drug addict with a poor work history." (Doc. 24 at 5).  However, the record reflects that Mr. Saylor's drug addiction was in remission during the relevant disability period (a point argued by counsel and supported by the record) and the ALJ did not consider his drug addiction to be disabling.  Unfortunately, the records of a large percentage of social security applicants who present appeals to this Court reflect comorbid issues of mental illness and substance abuse, providing a wealth of evidence that Mr. Saylor's medical issues were not unique.

Based upon the undersigned's close review of the Statement of Errors, the complexity of the factual and legal issues presented, the procedural history of this case, including counsel's familiarity with the administrative record and the length of that record, the undersigned concludes that this case fell well within the scope of "typical," "average," or "routine" social security cases, with issues no more complex and a record not more unique than at least a third of those cases.  The death of the original claimant prior to this civil appeal is unusual, but does not remove it from the normative range of such cases.

---

[9]Counsel appropriately makes no claim for time spent during administrative proceedings.

In addition to arguing that this case presented uniquely complex features, Plaintiff heavily relies upon two cases to support the claimed fee.  Both cases represent aberrations from the fees normally awarded in this district, and are distinguishable and/or unpersuasive.  First, in *Russell v. Com'r of Soc. Sec.*, Case No. 1:10-cv-746, this Court awarded $7066.40, reflecting 38.6 hours at a rate of $174 per hour, plus $350.00 in costs.  While the undersigned did award an unusually high fee in *Russell*, it is worth noting that the award in that case is approximately $5,500 *less* than the award sought by counsel here.  In addition, in *Russell* the primary issue was the hourly rate; the Commissioner argued vigorously (though unsuccessfully) that the $125 statutory rate should apply.  The Commissioner barely contested the number of hours claimed, which was fewer than 40, arguing for a small reduction only in a footnote.

Plaintiff additionally relies upon *Riley v. Com'r of Soc. Sec.*, Case No. 1:02-cv-625, a 2004 case in which my predecessor, Magistrate Judge Hogan, previously recommended awarding the same attorney 59.75 hours at $157 per hour, for a total of $9380.75 in fees, a recommendation subsequently adopted by Judge Weber.  Although the undersigned can find no legal justification for a similar award in this case, it should again be noted that the fee award requested here is more than $3,000 above what Judge Hogan awarded.

The above analysis of the specific characteristics of *this case* confirms that the expenditure of hours well in excess of the outer limits of comparable "average" social security cases cannot be deemed to be objectively "reasonable."  On the record presented, 40 hours represents the outside boundary of an objectively reasonable

16

range of hours for this case, considering a multitude of factors including the complexity of this case, the length of the administrative record and counsel's familiarity with it, the legal research required, and the skill and contemporaneous time records of counsel.

However, in order to further explain the exercise of its discretion, the Court will discuss a few of the time entries that led to an unwarranted expenditure of total time.

### 2.  Specific Time Entries Strongly Support Reduction

The undersigned declines to expend the judicial resources required to explain in detail the reduction for each and every time entry, but will instead provide a few illustrative examples.

Counsel's first time entries reflect a total of 5.1 hours on two separate days for review of local rules pertaining to Social Security cases, and for preparing and filing the complaint and a routine motion to proceed in forma pauperis.  Other than a single item indicating that the named Plaintiff was filing suit in a representative capacity on behalf of the deceased claimant, the complaint was extremely short and (appropriately) adhered to the formulaic nature of virtually all such complaints.  Given counsel's affidavit that he has 20 years of experience with social security cases and that "the bulk" of his legal practice is in the social security arena, the amount of time spent to gain familiarity with local rules and to file a basic complaint was excessive in this case.  Preparing such a routine complaint should not have taken more than one hour, and the time spent for ministerial tasks such as preparing a summons form, a motion to proceed in forma

pauperis, or filing should not have been charged at all.[10]

Another example is the entry for March 5, 2011, a date on which counsel spent .6 hours downloading pleadings.  On that date, the only document that had been filed was Plaintiff's own motion for leave to proceed in forma pauperis, with the attached complaint and cover sheet.  Spending attorney time to download and review a single docket entry that one previously filed is not reasonable.  Similarly, spending .7 hours on a routine motion to extend time (August 8, 2011 entry) is excessive.  *See, e.g., Brown v. Com'r of Soc. Sec.,* 2011 WL 5595931 (S.D. Ohio, Oct. 7, 2011)(Litkovitz, M.J., R&R reducing hourly rate to $125, and reducing claimed hours (27.5), describing 2 hours to prepare complaint and 30 minutes to prepare extension of time as "excessive")(adopted as opinion of the Court at 2011 WL 5596918).

Counsel spent 2.4 hours on two separate days simply "reviewing" the Commissioner's 11-page response to his Statement of Errors, but filed no reply memorandum.  No more than a half hour would have been reasonable.  *Compare Brown* (reducing time by two hours, finding that 5 hours was an "excessive amount of time for preparation of the reply brief" where reply brief was filed).  Counsel spent 1.4 hours reading the R&R of the undersigned (to which no objections were filed by either party), reading the order of the district judge adopting that R&R, and advising his client of the same.  Again, given that Plaintiff was successful and that no objections were filed, a half hour would have been more reasonable.

---

[10]Even in *Riley*, the Court reduced or eliminated entirely fees claimed for such tasks as preparing a motion to proceed in forma pauperis, a summons form, and a motion for extension of time.  *Id.* at 7.

As stated, while the majority of entries reflect excessive time, the Court declines to attempt to further detail the basis for discounting each and every one of those entries. Review of individual entries is hampered by counsel's practice of aggregating time spent on multiple activities. In the reply memorandum in support of an award of fees, counsel acknowledges that many entries reflect "intermingled" work. For example, despite entries of approximately 30 hours that include the phrase "legal research" among other activities, counsel clarifies in his reply that "probably less than one third" of that time constituted legal research. (See Doc. 24 at 4; *see also id.* at 5, suggesting that work occasioned by the death of Mr. Saylor "is probably closer to five hours" rather than the 15.7 hours' worth of entries in which that description appears). As suggested by the "typicality" analysis, a range of 2-5 hours for legal research would have been "reasonable" based upon the legal issues presented and the experience of counsel. While the inclusion of multiple activities in a single time entry is not per se unreasonable in every case, the undersigned's review of the entirety of the record confirms that the practice was unreasonable in this case, where the total hours is exceptionally high and most entries reflect multiple activities. On that basis alone, it would be appropriate to discount Plaintiff's total claimed hours by 50%. *See, Saint-Gobain Autover USA, Inc. v. Xinyi Glass North America, Inc.*, 707 F. Supp.2d at 764-765 (applying 50% reduction for inadequate summaries).

The Court recognizes that counsel exercised his billing judgment to eliminate 25.7 of the hours recorded, without which write-off the motion would have reflected a total request for more than 90 hours. Although Plaintiff fails to delineate in his original

motion which hours have been eliminated, Plaintiff's reply explains that the deleted time was intended to capture the time spent preparing a motion for extension, "some portion" of an entry for scheduling a deadline for filing the EAJA motion, and "some portion" of one of the two entries that included the filing the complaint, as well as "1.9 hours of clerical work." Unfortunately, on the record presented the exercise of counsel's billing judgment falls short of an objective standard of reasonableness.  *See generally Spiller,* 2013 WL 361052 at *3 n. 5 (denying request to add fees to original request, "in light of high number of billable hours [requested] in this case").

### 3.  Counsel's Efforts

Although an award in excess of 40 hours in this case is not compensable as objectively "reasonable" under the EAJA, the Court would be remiss were it not to comment that it has no desire to denigrate counsel's efforts in this case, which after all were fruitful for his client.  Counsel's legal reputation in the community and in this Court, evidenced in part by the affidavits that he has submitted in support of his hourly rate, is excellent and well-deserved.  The Court further respects the personal prerogative of every attorney to spend the time that he or she believes a particular case warrants, as well the subjective qualities of counsel (or an individual client) that may result in a particular attorney spending much greater than the number of hours that is typical for a given task, or on a given case.  In short, the fee award in this case is constrained by the EAJA's objective component, rather than any subjective opinion concerning the competence of counsel.

20

### C.  Hourly Rate

Having determined the number of hours that may be compensated as "reasonable" in this case, the Court must next determine the appropriate hourly rate. Under the EAJA, the amount of attorney fees "shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."  28 U.S.C. §2412(d)(2)(A).  A plaintiff seeking a higher hourly rate bears the burden of producing appropriate evidence to support the requested increase. *Bryant v. Commissioner of Soc. Sec.*, 578 F.3d 443, 450 (6th Cir. 2009).  Plaintiffs must "produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Plaintiff seeks compensation at an hourly rate of $194.00, a rate that is higher than any rate found through the undersigned's review of both published and unpublished social security case in which an EAJA award has been made by this Court. In support of that billing rate, Plaintiff relies on (1) the Consumer Price Index; (2) affidavits of peers; and (3) a 2010 Economics of Law Practice in Ohio survey by the Ohio State Bar Association.  Plaintiff's evidence is sufficient to establish entitlement to an hourly rate than the statute prescribes, but does not support the full rate requested. Based on the record presented, counsel should be compensated at the hourly rate of $174.00.

The precise rate of $194.00 is based upon counsel's calculation of the percentage increase that should be applied to the statutory rate, as calculated by the corresponding increase to the Consumer Price Index for Services in Cincinnati between 1996 and 2012.[11] However, *Bryant* teaches that the Consumer Price Index can be no more than an inexact guideline, in terms of the evidentiary proof submitted in support of a higher rate. In fact, this Court routinely continues to award the presumptive statutory rate of $125 in cases where a plaintiff relies solely on the CPI, as that index is inadequate as a matter of law to define eligibility to a specific higher rate. *See Zellner v. Astrue*, 2012 WL 273937 (S.D. Ohio Jan. 31, 2012); *see also Bushor v. Com'r of Soc. Sec.*, Case No. 1:09-cv-320-MRB, 2011 WL 3438439 (S.D. Ohio 2011)(reducing fee to $125 under *Bryant* where plaintiff's counsel failed to submit more than a copy of Consumer Price Index).

The 2010 Survey of attorney compensation cited by Plaintiff, while somewhat more helpful, also is insufficient to establish the precise rate sought.[12] Although Exhibit 23 of that survey does reflect "a mean hourly billing rate for solo practitioners in Ohio as $185-$220 at the 75th percentile," the same exhibit reflects $150 as the mean rate at the 25% percentile, with a median rate (probably more reliable than the mean) of $184. However, the referenced averages and median are state-wide, and do not reflect any adjustment for the slightly lower billing rates commonly charged in social security cases.

---

[11]The vast majority of attorney hours were recorded in 2011.

[12]The survey underscores caution in over-reliance upon CPI data, noting an overall decline in attorney income from 2006-2009, and that "[p]rivate practitioners …saw the largest spread in income reduction over the decade [ending in 2009]."

The affidavits of other social security practitioners in the greater Cincinnati area provide the strongest support for a rate of $174 per hour, rather than $194.  The affidavit of Mr. Mooney specifically states that an hourly rate of $174 is "reasonable and consistent with rates of reimbursement" in social security cases for practitioners with similar knowledge and experience.  The affidavit of Mr. Kapor also supports Plaintiff's request for "EAJA fees at an hourly rate of $174.00" as a rate that is "more than reasonable" given counsel's education, training, experience and knowledge as an "expert" in Social Security law.   Finally, the affidavit of Mr. Olden supports counsel's request for "an hourly rate of $174" as "more than reasonable," considering the rates charged by "other attorneys of similar experience and legal reputation in this legal community."

### D.  Fee Award to Plaintiff, not Counsel

Although Plaintiff has submitted evidence of the assignment of any fee award to her attorney, this Court is without information concerning whether Plaintiff owes a debt to the United States.  Despite having adopted a slightly different approach in a handful of past cases, the undersigned is persuaded by the decisions of a growing consensus of courts within the Sixth Circuit that "[u]nder Ratliff, the proper course is to award fees directly to Plaintiff and remain silent as to the direction of those fees."  *Oliver v. Com'r of Soc. Sec.*, ___ F.Supp.2d ___, 2013 WL 65429 *3 (S. D. Ohio Jan. 3, 2013)(collecting cases and quoting *Cornell v. Com'r of Soc. Sec.*, 2:11-cv-97, 2012 U.S. Dist. LEXIS 6115, at *6-7 (S.D. Ohio May 2, 2012)); *see also Cox v. Astrue*, ___ F. Supp.2d ___ , 2013 WL 217033 at *2 (E.D. Ky. Jan. 16, 2013)(holding that under *Astrue v. Ratliff*, fees

should be paid to litigants regardless of whether the Commissioner shows that the plaintiff owes a federal debt or not).

The issue of Plaintiff's assignment is a matter of contract law not presented as a dispute before this Court.  The fee award neither bars the United States from honoring a valid assignment, nor prevents it from disputing it.   Although the undersigned has included language in prior R&Rs suggesting that the United States "may" pay the fee directly to counsel once it confirms that no debt is owed, even that language exceeds the scope of the dispute before this Court and may improperly suggest an opinion about an unconsidered issue.  *Compare, e.g. Cox,* 2013 WL 217033 at *2 (holding that "any assignment of an EAJA award that predates the actual award of fees is void" under the Anti-Assignment Act, additional citations omitted).

### III.  Conclusion and Recommendation

For the reasons discussed herein, **IT IS RECOMMENDED THAT**:

1.   Plaintiff's motion seeking a fee award under the EAJA (Doc. 20) be GRANTED in part;

2.  Plaintiff should be awarded the sum of $6960.00, representing an attorney fee award that reflects a reasonable number of hours (40) and an hourly rate ($174.00) that is supported by this record.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

24

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

LESLIE CRIM,                                          Case No. 1:11-cv-137

               Plaintiff,                          Dlott, J.
                                         Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).